UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DARLUCE RIVERA**, <br><br> Plaintiff, <br><br> v. <br><br> **JPMORGAN CHASE BANK, N.A.**, <br><br> Defendant. | Case No. 1:23-cv-00225 (TNM) |

## MEMORANDUM ORDER

A bank foreclosed on a home in the District of Columbia. Plaintiff, the homeowner, claims that the bank never informed her of this, nor had any right to collect on the mortgage in the first place. And she adds that the bank eventually began sending her false and threatening monthly mortgage statements. So she sued the bank, alleging several violations of local and federal consumer protection laws.

The bank has moved to dismiss. It argues that Plaintiff lacks standing to pursue some of her claims and, regardless, fails to plausibly allege a violation of the law. The Court will dismiss Plaintiff's claims under D.C. law because the bank falls outside the purview of those statutes. But Plaintiff has standing to bring her federal-law claims, and each federal count sets out a plausible claim for relief. So the Court will grant in part and deny in part the bank's motion to dismiss.

I.

Plaintiff Darluce Rivera claims to own a residence in Washington, D.C. *See* 2d Am. Compl. (Compl.) ¶ 5, ECF No. 15-1. Back in 2001, Ms. Rivera's late husband (and predecessor-

1

in-interest) signed a promissory note with the North American Mortgage Company to get a loan for the property. *See id.* ¶¶ 6–7. The loan was secured with a deed of trust. *See id.*

At some point, Washington Mutual claimed to have acquired the servicing rights of the loan. *See id.* ¶ 8. And though Washington Mutual allegedly "did not obtain ownership of the loan" and "never obtained possession of the original Note," Mr. Rivera still made regular payments to it on the loan. *Id.* ¶¶ 9–11.

This is where JPMorgan Chase Bank comes in. In 2008 or 2009, Chase is alleged to have "falsely claimed" to have acquired the loan from Washington Mutual. *Id.* ¶ 12. In Ms. Rivera's telling, "no noteholder or entity with interest in the Note ever transferred and/or endorsed the Note to [Chase]," and thus Chase "never acquired any interest in the Note." *Id.* ¶ 16. Even so, in its initial communication, Chase told Mr. Rivera that the loan was in default. *Id.* ¶ 13. Mr. Rivera then asked Chase to provide proof that it could collect payments on the loan, but Chase allegedly refused. *See id.* ¶¶ 18–19.

At some point, Chase appointed a trustee to the deed of trust. *See Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 153 (D.D.C. 2015). In 2014, the trustee sent Mr. Rivera a letter stating that Chase referred the loan to it for foreclosure based on a default in his mortgage totaling $368,467. *See id.* Mr. Rivera then sued. He claimed the trustee violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, by (1) misrepresenting that it was duly appointed trustee; (2) falsely stating the debt was in foreclosure; (3) falsely stating the amount of the debt owed to Chase; (4) failing to validate the debt despite Mr. Rivera's request; and (5) threatening foreclosure. *See id.*

The trustee moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Judge Berman Jackson granted the motion, finding that Mr. Rivera lacked standing

under the FDCPA. *See id.* at 155–58. The court started with the principle that someone who is not a party to, or an intended beneficiary of, an assignment agreement lacks standing to challenge the validity of the assignment. *See id.* at 155. And because the claims there were "premised on the notion that the transfer of interest to [Chase] [from his original lender] was flawed," Mr. Rivera lacked standing to assert them. *Id.* at 156. The court found in the alternative that Mr. Rivera had failed to state a claim. *See id.* at 162.

Now to the substance of this case. In 2017, Chase foreclosed on the property, but Ms. Rivera alleges that Chase never served her with the foreclosure complaint. *See id.* ¶ 20–21. She retained counsel in 2021. *See id.* ¶ 22. And she says that Chase has known she was represented by counsel since April 2021, and "acknowledged that [she] was the successor-in-interest to the property and entitled to the rights of a borrower" by October 2021. *See id.* ¶¶ 23, 27.

After acknowledging that Ms. Rivera was represented by counsel, Chase began sending monthly mortgage statements and other correspondence to her lawyer. *See id.* ¶ 24. It also sent these statements directly to Ms. Rivera. *See id.* ¶ 25. According to her, these statements did not disclose the 2017 foreclosure and threatened that Chase would report false or negative information about her payments to credit reporting agencies. *See id.* ¶¶ 28–29.

Ms. Rivera alleges that, "in letters dated April 2021, October 2021, and March 2022," she requested various information from Chase, including copies of invoices of charges to her account, the servicing agreement, and proof that Chase owned the Note. *Id.* ¶ 30. Chase responded to her letters "by providing a history of loan transactions, reinstatement quote, payoff quote, escrow balance, copy of the Note, and identity of the master servicer." *Id.* ¶ 31. But Chase "failed to provide any of the . . . information" that Ms. Rivera specifically requested. *Id.* ¶ 32.

Ms. Rivera sued Chase in January 2023, alleging violations of the (1) FDCPA; (2) Truth In Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*; (3) Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et seq.*; (4) Mortgage Lender and Broker Act (MLBA), D.C. Code § 26-1101 *et seq.*; and (5) Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3901 *et seq.* *See generally id*. Chase has moved to dismiss under Rules 12(b)(1) and 12(b)(6). *See* Mot. to Dismiss (MTD), ECF No. 17. That motion is now ripe.

## II.

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff has the burden of establishing the Court's jurisdiction over her claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In this posture, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But because jurisdictional challenges go to the Court's power to hear a case, the Court "must give the plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion." *La Botz v. FEC*, 61 F. Supp. 3d 21, 27 (D.D.C. 2014). The Court is thus "not limited to the allegations contained in the complaint." *Id.*

To pass muster under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of

4

which [it] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## III.

### A.

Consider first Ms. Rivera's FDCPA claims, which she brings under both § 1692c and § 1692e. *See* Compl. ¶¶ 34–38. Chase argues that Ms. Rivera (1) lacks standing, and (2) fails to state a claim on the merits. The Court disagrees on both scores.

#### 1.

The Court begins, as it must, with subject matter jurisdiction. Article III of the Constitution restricts the jurisdiction of federal courts to "actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (cleaned up). Among other things, the case-or-controversy requirement means that a party must establish its "[s]tanding to sue." *Id.* (cleaned up). To do that, Ms. Rivera must show that she has suffered (1) an injury in fact, (2) that was caused by the challenged conduct, and (3) that is likely to be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61.

Chase first argues that Ms. Rivera has not pled that its alleged FDCPA violations caused her to experience a cognizable Article III injury. This is incorrect.

To be sure, "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the rights to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997). This means that, to establish standing, a plaintiff must demonstrate "a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Harms that "readily qualify as concrete injuries under Article III" include "tangible harms, such as physical harms and monetary harms." *TransUnion LLC v.*

5

*Ramirez*, 141 S. Ct. 2190, 2204 (2021).  Some intangible harms can also be concrete — "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id.*

Ms. Rivera claims that Chase "sen[t] mortgage statements to [her] when [it] knew [she] was represented by an attorney," Compl. ¶ 38, violating § 1692c's requirement that a debt collector not communicate with a consumer when the debt collector knows the consumer is represented by counsel, *see* 15 U.S.C. § 1692c(a)(2).  She also claims that Chase flouted § 1692e's prohibition against using "false, deceptive, or misleading representation or means in connection with the collection of any debt" by (a) threatening to falsely report her as delinquent on the loan to credit reporting agencies, and (b) attempting to collect on a loan that it had no interest in.  *See* Compl. ¶¶ 36–37.

At least in Ms. Rivera's telling, this is not a case of no harm, no foul.  She says that these false and threatening statements caused her damages including "out-of-pocket costs, cloud on title, [being] unable to sell property, legal fees defending the illegal foreclosure, fear of losing the property, worry about where her loved ones will live, anxiety about losing the family home, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, mental[,] and emotional distress."  *See id.* ¶ 39.

At this preliminary stage, and taking all allegations in the Complaint as true, Ms. Rivera has plausibly alleged a concrete injury-in-fact.  Chase's allegedly deceptive and intimidating statements caused her tangible harm, including "out-of-pocket costs and legal fees," and intangible harms such as "emotional distress."  *Benjamin v. Rosenberg & Assocs., LLC,* No. 19-cv-3012, 2021 WL 3784320, at *7 (D.D.C. Aug. 26, 2021); *see* Compl. ¶ 39.  So Ms. Rivera sufficiently alleges cognizable Article III injuries.

Chase next says that Ms. Rivera is without standing because she is not a "consumer" under the FDCPA. *See* MTD at 6. Not so. For Ms. Rivera's § 1692e claims, there is no requirement that she qualify as a consumer as defined in § 1692k. "[T]he ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under § 1692e." *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649–50 (6th Cir. 1994). And though the cause of action set out in § 1692c concerns "consumers," it expressly defines "consumer" to "include the consumer's spouse." 15 U.S.C. § 1692c(d). So Ms. Rivera is a consumer for purposes of § 1692c.[1]

Chase's final argument fares no better. It says that Ms. Rivera lacks standing to attack the assignment of the Note. *See* MTD at 6–7. Relying on *Rivera I*, Chase says that someone who is not a party to, or an intended beneficiary of, an assignment agreement lacks standing to challenge the validity of the assignment. *See* 142 F. Supp. 3d at 154. True enough. The problem for Chase is that Ms. Rivera's FDCPA claims here are different. They are not an attempt to undermine the validity of an alleged transfer of interest to Chase. Whether Chase violated § 1692c by communicating with Ms. Rivera after she retained counsel or contravened § 1692e by threatening to falsely report her as delinquent on the loan is not "contingent upon [an] allegation that [a] transfer of interest in [the] mortgage loan was faulty." *Id.* at 157.

Rivera thus has standing to pursue her claims under the FDCPA.

**2.**

Having disposed of Chase's standing arguments, the Court considers the merits. Chase argues that Ms. Rivera fails to state claim under § 1692c because (1) the claim is untimely, (2)

---

[1] Mr. Rivera's death does not change the analysis. The FDCPA's implementing regulations define consumer to "mean[] any natural person, whether living *or deceased*, obligated or allegedly obligated to pay any debt." 12 C.F.R. § 1006.2(e) (emphasis added).

7

another statute required Chase to send the challenged statements, and (3) she failed to notify Chase of her wishes.  These defenses fail.

*First*, Chase says that the § 1692c claim falls outside the FDCPA's one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d).  "Dismissal on the basis of a statute of limitations is appropriate only if the complaint on its face is conclusively time-barred." *De Csepel v. Rep. of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013).  According to Chase, "it is clear" that it began sending Ms. Rivera monthly mortgage statements by November 2021, which is more than a year before she sued.  *See* MTD at 8.

This is not persuasive.  To begin, Chase admits in the next breath that the "Complaint does not allege the date on which Chase began sending monthly mortgage statements to her." *Id.* Instead, Ms. Rivera alleges that Chase sends monthly mortgage statements, which would include the twelve months before the Complaint.  And "[e]ven if . . . a majority of the allegedly unlawful debt collection occurred outside the statute of limitations," a plaintiff's FDCPA claim is not time barred when the plaintiff "alleges that some of the alleged misconduct occurred within the statute of limitations." *Hawthorne v. Rushmore Loan Mgmt. Servs., LLC*, No. 20-cv-393, 2021 WL 3856626, at *15 (D.D.C. Aug. 30, 2021).  That is what Ms. Rivera alleges here.[2]

*Second*, Chase argues that it did not violate the FDCPA because it sent mortgage statements as required by TILA.  The FDCPA provides that "[n]o provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [Consumer Financial Protection Bureau (CFPB)]."  15 U.S.C.

---

[2] Insofar as Chase argues that Ms. Rivera cannot sue it for current violations because she did not sue it for similar violations that occurred outside the statute of limitations, this argument fails. "[N]othing in the FDCPA suggests that similar violations should be grouped together and treated as a single claim for purposes of the FDCPA's statute of limitations." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 405–07 (4th Cir. 2020).

§ 1692k(e). And the CFPB has determined that servicers are "generally" not liable "under the FDCPA if they comply with certain provision of . . . Regulation Z," *see* CFPB Bulletin 2013-2, 2013 WL 9001249 (Oct. 15, 2013), which requires servicers to "provide the consumer, for each billing cycle, a periodic statement," 12 C.F.R. § 1026.41(a).

Chase fairly argues that because it merely sent mortgage statements as required by the FDCPA's implementing regulations, it cannot be liable under the statute. *See* MTD at 9–10. The problem for Chase is that Ms. Rivera's allegations are not so limited. And an otherwise TILA-compliant communication may be "in connection with the collection of [a] debt"—and thus actionable—if "an animating purpose of the communication [is] to induce payment by the debtor." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)).

As pled in the Complaint, Chase's communications qualify: According to Rivera, it sent monthly statements that "threatened to report [her] as delinquent on the loan to the credit reporting agencies when [it] knew [she] was never liable for the debt." Compl. ¶ 37. If so, Rivera plausibly alleges that "an animating purpose" of the mortgage statements sent by Chase was to "induce payment by" her. *McIvor*, 773 F.3d at 914. So TILA offers Chase no safe harbor from Ms. Rivera's FDCPA claims at this stage. The analysis may be different once Ms. Rivera must prove up her claims.

*Third*, Chase submits that Rivera fails to plausibly allege a violation of § 1692c because she did not notify it that she wished further communications to stop. *See* MTD at 10–11. It notes that § 1692c(c) provides that a "debt collector shall not communicate further with the consumer" "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the

consumer." But this provision is unrelated to Ms. Rivera's claim. She alleges a violation of a separate FDCPA provision—§ 1692c(a)(2)—which provides a freestanding cause of action against servicers that attempt to collect a debt from a consumer when the servicer knows the consumer is represented by counsel. It contains no opt-out requirement.

Ms. Rivera has plausibly alleged violations of § 1692c and § 1692e, and she has standing to pursue these claims.

**B.**

Now for Ms. Rivera's claims under RESPA. Chase says that she lacks statutory standing to bring these claims and, alternatively, they are time-barred. Chase is wrong; these claims survive.

Starting with statutory standing, Chase argues that Ms. Rivera cannot sue under RESPA because she is not a "borrower" for purposes of the statute. *See* MTD at 15. Chase points out that she is not personally liable for the debt. To be sure, § 2605(e) and (k) concern a servicer's duties to a "borrower." But Ms. Rivera counts. RESPA's implementing regulations provide that "[a] confirmed successor in interest shall be considered a borrower for purposes of . . . this subpart"—which "applies to any mortgage loan." 12 C.F.R. § 1024.30(1), (d). And Ms. Rivera alleges that she was confirmed as the successor-in-interest to her late husband. *See* Compl. ¶ 27.

Chase next objects that her RESPA claims are untimely. A RESPA claim must be brought within three years of its accrual. *See* 12 U.S.C. § 2614. And Chase says that RESPA claims accrue on "the date of the closing of the real estate transaction," which, here, was in 2001—well outside the statute's three-year limitations period. MTD at 14. This is incorrect. Not all RESPA claims accrue on the date of closing. The cases that Chase relies on hold that "[a] cause of action under *§ 2607* accrues on the date of closing." *Palmer v. Homecomings Fin.*

*LLC*, 677 F. Supp. 2d 233, 237 (D.D.C. 2010) (emphasis added).

Rivera's claims are brought under § 2605, which has a different limitations period and regulates different conduct. Indeed, § 2605 specifically regulates conduct after closing. For instance, how could there be "a dispute regarding the borrower's payments" before the closing of the loan even occurs? 12 U.S.C. § 2605(e)(3). It makes no sense to say that all § 2605 claims accrue on closing. And that is not the law.

Chase gives no other reason to find Ms. Rivera's RESPA claims untimely or implausible. She alleged that Chase failed to respond to written requests that she sent in 2021 and 2022, *see* Compl. ¶ 30, which is well-within the three-year statute of limitations.

Ms. Rivera thus has standing to pursue her timely RESPA claims.

### C.

Next up are Ms. Rivera's TILA claims. Chase's sole basis for dismissing these claims is that they are time-barred. *See* MTD at 13–14. As with its other timeliness objections, this argument fails.

Claims under TILA typically must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Chase claims that a cause of action accrues under TILA "no later than the settlement date" of the loan. MTD at 13 (quoting *George v. Bank of Am., Nat'l Assoc.*, 821 F. Supp. 2d 299, 302 (D.D.C. 2011)). It suggests that *George* reflects a per se rule that TILA claims must be filed within a year of the loan settling. The Court disagrees.

Like RESPA, TILA contemplates that a violation may occur after a loan's settlement date. Section 1641(g)(1), for example, requires creditors to make certain disclosures "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred." This

11

provision clearly governs conduct that happens after a loan's settlement date. How could a creditor even violate this provision before then? Indeed, this Court has found that a claim under § 1641 could be timely even if the plaintiff secured the mortgage more than a decade before suing. *See Toggas v. Wachovia Mortg.*, No. 19-cv-3407, 2020 WL 7264069, at *1–*3 (D.D.C. Dec. 10, 2020). So Chase is wrong that Ms. Rivera's TILA claims accrued in 2001.

Chase also reprises its argument that the claims accrued sometime in 2021 because that's when she began receiving monthly mortgage statements. *See* MTD at 13–14; *see also id.* at 8–9 (making this argument about FDCPA claims). This argument fails for the same reason as before: Ms. Rivera does not allege that she began receiving statements in 2021, and, regardless, she "alleges that some of the alleged misconduct occurred within the statute of limitations." *Hawthorne*, 2021 WL 3856626, at *15.

Ms. Rivera thus plausibly alleges timely claims under TILA.

### D.

Consider next Ms. Rivera's claim under the MLBA. Chase objects at the threshold, arguing that, by its own terms, the MLBA does not even apply to it. Chase is correct.

Assuming that the MLBA creates a private cause of action for violating § 26-1114, Chase is exempt from its coverage.[3] The MLBA explains that it "shall not apply to . . . [a]ny bank . . . incorporated or chartered under" local or federal law "that accepts deposits and is regulated under title [26 (Banks and Other Financial Institutions)]." D.C. Code § 26-1102(1). Put simply, "banks are exempt from the [MLBA]," *In re Stevenson*, 789 F.3d 197, 204 (D.C. Cir. 2015)

---

[3] As Judge Bates has observed with respect to another provision of the MLBA, "[n]either any District of Columbia court nor any federal court appears to have considered whether the MLBA permits a private cause of action[.]" *Mushala v. U.S. Bank, Nat'l Assoc.*, No. 18-cv-1680, 2019 WL 1429523, at *9 n.10 (D.D.C. Mar. 29, 2019).

(Kavanaugh, J.), and Ms. Rivera alleges that Chase is "one of the largest banks in the United States," Compl. ¶ 3.

Ms. Rivera cannot seriously argue that Chase falls outside the MLBA's safe harbor for banks, but she does anyway. She says that Chase is out of luck because she did not allege that it "accepts deposits and is regulated under Title 26." Pl.'s Opp'n (Opp'n) at 8, ECF No. 18. Assuming this argument is made in good faith, it is specious and does not get her discovery on this claim. The Court takes judicial notice of Chase's supporting documents that show it has more than twenty branches throughout the District that are insured by the Federal Deposit Insurance Incorporation (FDIC).[4] *See* BankFind Query Details, ECF No. 19-1. The Court thus finds that the MLBA does not apply to Chase.

So Ms. Rivera's MLBA claim fails.

### E.

Finally, consider Ms. Rivera's claim under the CPPA. "Despite its broad reach, the CPPA applies only to consumer-merchant relationships." *Busby v. Cap. One, Nat'l Assoc.*, 772 F. Supp. 2d 268, 279 (D.D.C. 2011). Chase argues that it never was in a consumer-merchant relationship with Ms. Rivera. The Court agrees.

The CPPA defines a "consumer" as "a person who does or would purchase, lease (from), or receive consumer goods or services . . . or a person who does or would provide the economic demand for a trade practice." D.C. Code § 28-3901(a)(2). And "merchant" is defined as "a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer

---

[4] The Court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Chase's documentation—queries from the Bank Find feature on the FDIC's website—are "public records for which the court may take judicial notice." *Blue v. Fremont Inv. & Loan*, 562 F. Supp. 2d 33, 44 n.10 (D.D.C. 2008).

goods or services, or a person who does or would supply the goods or services" associated with a trade practice.  *Id.* § 28-3901(a)(3).

Rivera has made no allegations suggesting the existence of a consumer-merchant relationship here.  There is no hint that Chase "supplied, or held [it]self out as [an entity that] would supply, any goods or services to [Ms. Rivera] in connection with her ownership or sale of the house."  *Ali v. Tolbert*, 636 F.3d 622, 629 (D.D.C. 2011); *accord Busby*, 772 F. Supp. 2d at 280 (finding no consumer-merchant relationship when the plaintiff "identified no goods or services she purchased or received from [the bank]").  This dooms her CPPA claim.

She responds that Chase did establish a consumer-merchant relationship because it "made several solicitations for [her] to apply for a modification" of her loan.  Opp'n at 9.  The Court need not consider this argument.  Ms. Rivera admits that her operative Complaint "does not allege that [Chase] solicited [her] to apply for a modification."  *Id*. at 10.  And "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Ms. Rivera thus fails to state a plausible CPPA claim.

## IV.

For these reasons, it is hereby **ORDERED** that Defendant's [17] Motion to Dismiss is **GRANTED in part** and **DENIED in part**, as detailed below:

The Court denies the motion as to Counts I, IV, and V.  The Court dismisses without prejudice Counts II and III.  Dismissals with prejudice are disfavored in this circuit, and the trial court must find that the allegation of other facts consistent with the challenged pleadings could not possibly cure the deficiency.  *See In re Danaher Corp. S'holder Derivative Litig.*, 549 F. Supp. 3d 59, 75 n.12 (D.D.C. 2021).  That high standard is not met here.

**SO ORDERED**.

Dated: September 26, 2023                                      TREVOR N. McFADDEN, U.S.D.J.